IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| ANNETTE GULLEDGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 12-2064-JDT |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER AFFIRMING COMMISSIONER'S DECISION

This action was filed by the Plaintiff, Annette Gulledge, to obtain judicial review of the Defendant Commissioner's final decision denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. Plaintiff's application for benefits was denied initially and upon reconsideration by the Social Security Administration ("SSA"). At the Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on March 3, 2011. (R. 32-49.) On April 14, 2011, the ALJ issued a decision finding that Plaintiff was not disabled. (R. 20-27.) The Appeals Council denied Plaintiff's request for review on December 2, 2011. (R. 1-5.) Therefore, the ALJ's decision became the final decision of the Commissioner.

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. The

reviewing court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* Judicial review is limited to determining whether or not there is substantial evidence in the record as a whole to support the Commissioner's decision, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604–08 (6th Cir. 2009); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010).

Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion. *Perales*, 402 U.S. at 401; *Lindsley*, 560 F.3d at 604-05; *Kyle*, 609 F.3d at 854. The Commissioner, not the reviewing court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. *See Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). In addition, if the decision is supported by substantial evidence, it should not be reversed even if substantial evidence also supports the opposite conclusion. *See Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Plaintiff was born on October 6, 1962, and has a GED plus two years of college. (R. 36, 130, 132.) She has past relevant work as a cashier, tamale maker, warehouse worker, and program assistant at a rehabilitation home. (R. 46, 125.) Plaintiff alleged she became disabled on October 5, 2008, due to heart disease and stress. (R. 124.)

The ALJ found that Plaintiff met the non-disability insured status requirements and had not engaged in substantial gainful activity since her alleged disability onset date. He also found that Plaintiff's coronary artery disease status post stent replacement, adjustment disorder with anxiety, cluster B personality style, and cocaine dependence were severe impairments. (R. 22.) However, the ALJ found that Plaintiff's impairments did not, either singly or in combination, meet or medically equal any listed impairment in 20 C.F.R., Pt. 404, Subpt. P, App. 1. (R. 22-23.) He also determined that Plaintiff's subjective complaints regarding the intensity, persistence, and limiting effects of her symptoms were not fully credible. (R. 24.) The ALJ further found that Plaintiff had the residual functional capacity to perform light work, except that she must avoid extreme temperatures and have only a limited exposure to the general public. (R. 23-26.) Relying on the testimony of a vocational expert, the ALJ also determined that, given her residual functional capacity, Plaintiff was able to perform her past relevant work as a child care attendant and nurse's aid. Accordingly, Plaintiff was not under a disability at any time through the date of the decision. (R. 27.)

The Social Security Act defines disability as the inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1). The initial burden of going forward is on the claimant to show that she is disabled from engaging in her former employment; the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. *Id.*; *see Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). The claimant bears the ultimate burden of establishing an entitlement to benefits. *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993).

In determining disability, the Commissioner conducts a five-step sequential analysis, as set forth in 20 C.F.R. § 404.1520 and § 416.920:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
2. An individual who does not have a severe impairment will not be found to be disabled.
3. A finding of disability will be made without consideration of vocational factors if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1.
4. An individual who can perform work that she has done in the past will not be found to be disabled.
5. If an individual cannot perform her past relevant work, other factors including age, education, past work experience, and residual functional capacity will be considered to determine if other work can be performed.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Further analysis is unnecessary if it is determined that an individual is not disabled at any point in this sequential evaluation process. *Id.*; *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002). Here, the analysis proceeded to step four, where the ALJ determined that Plaintiff was able to do her past work.

Plaintiff does not take issue with the ALJ's evaluation of her heart condition. Rather, she contends that the ALJ erred in failing to find additional severe impairments and in failing to give greater weight to the opinion of a psychiatrist, Dr. Robert Baldwin, M.D. Specifically, Plaintiff first contends the ALJ should have found the following additional severe impairments: depressive disorder with psychosis, post-traumatic stress disorder ("PTSD"), generalized anxiety disorder, and degenerative disease of the cervical spine.

4

In the Sixth Circuit, the claimant's burden in establishing that she has a severe impairment is light. The Court of Appeals has explained that

> the claimant's burden of proof at step two "has been construed as a *de minimis* hurdle in the disability determination process . . . [A]n impairment can be considered *not* severe only if it is a slight abnormality that *minimally* affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (emphasis added) (citing *Farris v. Sec'y of Health and Human Serv.*, 773 F.2d 85, 89-90 (6th Cir. 1985)). *See also Bowen v. Yuckert*, 483 U.S. 137, 158-59, 107 S. Ct. 2287, 96 L.Ed.2d 119 (1987) ("Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits without undertaking this vocational analysis.") (O'Connor, J., concurring). Furthermore, step-two severity review is used primarily to "screen out totally groundless claims." *Farris*, 773 F.2d at 89.

*Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 774 (6th Cir. 2008). However, once the ALJ finds any severe impairment at step two, the failure to find that other particular impairments are severe is often harmless error if the ALJ then fully considers all of the claimant's impairments throughout the rest of the sequential evaluation process. *Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). In this case, while the ALJ may have listed only some of Plaintiff's impairments as severe, he fully considered all of the alleged impairments throughout the evaluation process. Therefore, the ALJ's failure to specifically designate any other impairment as severe was harmless error.

With regard to her spinal impairments, Plaintiff was seen by Dr. Wood at Campbell Clinic Orthopedics on November 6, 2007, complaining of neck and low back pain, numbness, and tingling in the left fingers. (R. 281). X-rays of the spine showed minimal arthritic changes, good alignment and well maintained disc spaces, a small anterior ridge at

5

L3 and L5, only slight curvature of the lumbar spine which was noted as probably positional, and no instability. Dr. Wood diagnosed cervical strain and degenerative arthritis of the lumbar spine. He prescribed pain medication and cleared Plaintiff to return to work as a driver three days later. (R. 282-283). Further spinal x-rays in August 2008 were normal. (R. 275-276.) On November 24, 2010, she had no musculoskeletal symptoms, and an examination of her back and extremities showed no tenderness or swelling, normal alignment, normal range of motion, and normal tone. (R. 406.) The ALJ noted there was no evidence in the record of treatments such as surgery, injections, physical therapy, or the use of orthotics. (R. 25.)[1]

With regard to her mental impairments, the ALJ noted that Plaintiff did not seek any mental health treatment prior to a consultative psychological examination by Samuel A. Holcombe, Psy.D. On September 10, 2009, Dr. Holcombe diagnosed Plaintiff with adjustment disorder with anxiety, cocaine dependence in remission, and cluster B personality traits. (R. 321.) However, he also diagnosed malingering, stating that Plaintiff "was an unreliable and evasive historian at times" and that she "proved to be a theatrical, but superficially cooperative claimant." (R. 319, 321.) Dr. Holcombe stated, "[t]he claimant made implausible allegations of visual hallucinations. She was also suggestible to hallucinations in any sensory modality that I suggested to her, to include auditory and

---

[1] The ALJ also noted the record documented no clinical findings, supporting diagnostic testing, or ongoing medical treatment for symptoms affecting Plaintiff's extremities. Furthermore, respiratory examinations were unremarkable, and Plaintiff continued to smoke. (R. 25.)

gustatory hallucinations." Dr. Holcombe "did not find her description of these symptoms to be convincing." (R. 320.) He indicated that Plaintiff "did not present with symptoms of disorganized thinking or delusions" and "did not appear to have unusual features of memory or cognition." (*Id.*) She denied ever attempting suicide and denied any current suicidal or homicidal ideation, plan, or intent. (*Id.*) Dr. Holcombe opined that Plaintiff had mild impairment in the areas of understanding, remembering, and concentration, mild impairment of social skills, and was moderately impaired in her ability to adapt to change. (R. 322.)

A state agency reviewing psychologist, Fawz E. Schoup, Ph.D., completed a Psychiatric Review Technique form on November 24, 2009. Dr. Schoup agreed with Dr. Holcombe's diagnoses but assessed Plaintiff with only mild limitations in all areas. (R. 338-350.)

In October 2009, a year after her alleged disability onset date, Plaintiff was evaluated by mental health providers at Case Management, Inc. ("CMI") and diagnosed with major depressive disorder with psychosis, panic disorder with agoraphobia, and PTSD. She was treated only with medication. (R. 382-384, 414-415.)[2] Plaintiff sought no further mental health treatment for ten months, following up at CMI in August 2010, October 2010, and November 2010. The mental health providers who evaluated Plaintiff assigned various diagnoses but again treated her only with medication. (R. 410-413.) Plaintiff followed up

---

[2] Plaintiff reported during the intake interview at CMI in October 2009 that she had attempted suicide several times by walking in front of traffic (R. 383), even though she told Dr. Holcombe only a month earlier that she had never attempted suicide (R. 320).

7

with CMI again in January 2011, at which time she reported her medications were working fine and that her appetite and sleeping patterns were normal. Her mood was euthymic, her affect appropriate, and her memory intact; insight and judgment were normal, she was goal oriented, and her speech was clear and coherent. (R. 409.)[3]

At her August 2010 follow-up at CMI, Plaintiff was seen by Dr. Robert Baldwin, M.D., a psychiatrist. (R. 412-413.) On October 25, 2010, Dr. Baldwin completed an assessment of Plaintiff's mental impairments in which he indicated that she had marked limitations in three areas and extreme limitations in fifteen areas. He stated Plaintiff had been unable to work for two years due to her mental and physical illness. (R. 398-400.)

In considering Plaintiff's mental impairments, the ALJ gave great weight to the opinion of the consultative psychologist, Dr. Holcombe, and substantial weight to the opinion of the reviewing psychologist, Dr. Schoup, but he did not completely adopt either opinion. The ALJ stated that Dr. Holcombe's assessment that Plaintiff's adaptability to change was moderately impaired was inconsistent with later treatment evidence in the record, but agreed with Dr. Holcombe's statement that there "does not appear to be a psychological reason why this claimant would be unable to work at this time as she chose to do so." (R. 26, 321.) The ALJ also noted that a "slightly more restrictive" residual functional capacity than that assessed by Dr. Schoup was appropriate. (R. 26.) Dr. Baldwin's opinion, however, was completely rejected by the ALJ:

---

[3] Plaintiff testified at the hearing that she saw a case manager at CMI once a month. (R. 42.) However, there is no documentation of such treatment in the record.

> [T]he undersigned gives no weight to the medical source statement (marked or extreme limitations in all 18 functional categories assessed) (Ex. 18F) provided by Dr. Robert Baldwin because it is highly inconsistent with the longitudinal medical record and not well supported by objective clinical findings. Furthermore, it appears Dr. Baldwin's assessment is based on a single evaluation of the claimant conducted in August 2010, and he appears to have given significant weight to the claimant's self-report of symptoms (hallucinations, several suicide attempts, etc.) that she either denied ("denied ever having made a suicide attempt") or feigned ("presented with implausible hallucinations in any sensory modality that I suggested to her") at the consultative psychological examination (Ex. 9F and 16F).

(R. 26.) The ALJ also stated that Plaintiff's reported activities of daily living were inconsistent with significant limitations, as was the fact that in 2009 she had earnings from self-employment that were almost enough to rise to the level of substantial gainful activity. (R. 25-26.)

Plaintiff asserts that Dr. Baldwin is a treating physician whose opinion is entitled to controlling weight under the "treating source rule." *See Sawdy v. Comm'r of Soc. Sec.*, 436 F. App'x 551, 553 (6th Cir. 2011). *See also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) ("[I]n all cases, there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference."). " If an ALJ declines to give controlling weight to such an opinion, . . . the ALJ [still must] fully consider it in accordance with certain factors, [20 C.F.R.] § 404.1527(d)(2)-(6), and . . . provide 'good reasons' for discounting the opinion." *Sawdy*, 436 F. App'x at 553.

The ALJ in this case noted that Dr. Baldwin only saw Plaintiff on a single occasion and does not appear to have considered him a treating source. The Court finds this was not error. While the record shows that Plaintiff was seen at CMI on six occasions, there is no

9

evidence that Dr. Baldwin had an ongoing treatment relationship with Plaintiff or ever personally saw her again.

Nevertheless, even if Dr. Baldwin could be considered a treating physician, the ALJ found that his opinion was inconsistent with the remainder of the medical evidence and unsupported by objective clinical findings. These "good reasons" are supported by the record. There is nothing in the clinical findings of any of Plaintiff's medical providers, including the findings of Dr. Baldwin himself, to support such extreme limitations on Plaintiff's functioning. Therefore, it was not error for the ALJ to reject the opinion of Dr. Baldwin and give greater weight to the opinions of Dr. Holcombe and Dr. Schoup.

The Court finds the ALJ's decision is supported by substantial evidence in the record and is not contrary to law. Therefore, the Commissioner's conclusion that Plaintiff is not disabled is AFFIRMED. The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

                                                 s/ **James D. Todd**
                                                 JAMES D. TODD
                                                 UNITED STATES DISTRICT JUDGE